**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| Robert L. Pitts, Chairman, Fulton County Board of Commissioners, and Fulton County Board of Registration and Elections, <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | CIVIL ACTION: <br><br> 1:26-MC-0177 <br><br> BRIEF IN SUPPORT OF MOTION TO UNSEAL |

.

**REDACTED BRIEF IN SUPPORT OF PETITIONERS'
MOTION TO UNSEAL AFFIDAVIT**

On January 28, 2026, the United States obtained a search warrant (the "Search Warrant" or "Warrant") under seal from the U.S. District Court for the Northern District of Georgia permitting the seizure of 2020 election-related materials from the Clerk of the Fulton County Superior Court. ███████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
█████████████████████

Petitioners Robert L. Pitts, Chairman of the Fulton County Board of Commissioners, and the Fulton County Board of Registration and Elections

respectfully seek an order unsealing the Search Warrant Affidavit. The Supreme Court and the Eleventh Circuit have long recognized a common law right of access to judicial proceedings and records; the Northern District of Georgia has found that this common law right applies to pre-indictment search warrant affidavits. The Affidavit holds significant public importance and the factors that courts consider when determining whether to unseal such records weigh heavily in favor of disclosure. Accordingly, the Court should grant the motion to unseal.

## FACTUAL BACKGROUND

### I. The Warrant and Seizure of the Fulton County 2020 Election Records

On January 28, 2026, at 2:31 p.m., the United States obtained the Search Warrant under seal from Magistrate Judge Salinas in this District. ████

████████████████████████████████

████████████████████████████████

████████████████████████ (Ex. 1.) ████

████████████████████████████████

████████████████████████████████

████████████████████████ Later that day, the FBI seized and removed approximately 656 boxes of original documents and records from the 2020 election that had been placed under seal by the Fulton County Superior Court and were being lawfully held under the custody of the Fulton County

2

Clerk.

███████████████████████████████████████

███████

███████████████████████████████████████

████████████████████████████████████

█████████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████

█████████████████████████████████

████████████████████████████

████████████████████████████

██████████████████████

█████████████████████████████████

████████████████████████████

████████████████████████████

████████████████



A week before █████████████████████████████████████

██████ and before the FBI executed the Warrant, the special agent in charge of the FBI's Atlanta field office, Paul Brown, was removed from his position. Reportedly, the reason for Mr. Brown's removal is that he expressed concerns about the FBI's investigation into President Donald Trump's longstanding and unsubstantiated allegations of voter fraud in Fulton County and refused to carry out the searches and seizures of records tied to the 2020 election. Ken Dilanian & Ebony Davis, *Atlanta FBI boss ousted after balking at 2020 election probe*, MS NOW (Jan. 30, 2026), https://www.ms.now/news/atlanta-fbi-boss-ousted-after-balking-at-

2020-election-probe. Additionally, the presence of Director of National Intelligence Tulsi Gabbard and FBI Deputy Director Andrew Bailey at the raid on January 28 indicate that seizure of these records was a top priority for the Administration.

## II. Recent Efforts to Obtain Fulton County 2020 Election Related Materials

A brief review of the numerous election fraud allegations in Georgia and Fulton County reveals that these allegations have been exhaustively investigated and consistently rejected by courts, election officials, and federal law-enforcement authorities. All of this information was available to the United States before it sought the Warrant:

***Lawsuits challenging the election all failed:***

- Eleven different lawsuits challenging various aspects of Georgia's 2020 election were filed. None succeeded, and no court found fraud, irregularities, or procedural deficiencies sufficient to change Georgia's presidential election result.[1]

- Plaintiffs voluntarily dismissed three of the suits, including one before the Superior Court of Fulton County, "rather than submit their evidence to a

---

[1] Sen. John Danforth et al., *Lost, Not Stolen: The Conservative Case that Trump Lost and Biden Won the 2020 Presidential Election*, 27 (2022), https://lostnotstolen.org/download/378/.

court and to cross-examination."[2]

***Georgia election officials found insufficient evidence of fraud:***

- In a January 6, 2021 letter, Secretary of State Brad Raffensperger explained that his office and the Georgia Bureau of Investigation had investigated all fraud claims and found "nowhere close to sufficient evidence" to cast doubt on the result of the presidential election in Georgia.[3]

- Secretary Raffensperger specifically refuted claims regarding Dominion voting machines, absentee ballots, poll-watcher access, and allegedly ineligible voters.[4]

- Gabriel Sterling, chief operating officer in Secretary Raffensperger's office and the voting systems implementation manager, led the effort to address these allegations, including claims that a video at State Farm Arena showed election workers counting fraudulent ballots.[5] After reviewing the video, Sterling and state investigators concluded on December 4, 2020 that only

---

[2] Press Release, Ga. Sec'y of State, *Trump Legal Team Folds* (Jan. 7, 2021), https://sos.ga.gov/news/trump-legal-team-folds.
[3] Letter from Brad Raffensperger, Ga. Sec'y of State, to Members of Cong. (Jan. 6, 2021),https://sos.ga.gov/sites/default/files/2022-02/Letter_to_Congress_from_Secretary_Raffensperger_%281-6-21%29.pdf.
[4] *Id.*
[5] U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the U.S. Capitol, June 21, 2022, Hr'g Tr., https://www.npr.org/2022/06/21/1105848096/jan-6-committee-hearing-transcript

normal ballot processing had occurred" and the video did not show fraud.[6]

- In sworn testimony before the House Select Committee investigating January 6, Sterling explained that the President's attorneys had access to the same video but "chose to mislead" Georgia legislators and the public about what it showed, even though the claims were "obviously untrue."[7]

***DOJ and FBI investigations found claims of election fraud meritless:***

- During President Trump's first term, the Department of Justice and the FBI investigated claims of voter fraud in Fulton County—including claims about Dominion Voting System machines and the State Farm Arena video—and concluded they "did not see any evidence of fraud."

- Attorney General Bill Barr directed Northern District of Georgia U.S Attorney Byung Jin Pak to investigate with FBI assistance and form an "independent judgment."[8]

- U.S. Attorney Pak has explained that he "received no substantial reports of election fraud supported by evidence," that claims of serious irregularities in

---

[6] Rudy Giuliani, attorney for President Trump, was later disbarred in New York in part for "falsely and dishonestly" asserting that the video showed fraudulent ballot-counting. *In re Giuliani*, No. 2021-00506 (N.Y. App. Div.) at 11, https://www.nycourts.gov/courts/ad1/calendar/List_Word/2024/07_Jul/02/PDF/Matter%20of%20Giuliani%20(2021-00506).pdf.

[7] *See supra* n.5.

[8] *Id.* Barr explained that he wanted the DOJ's and FBI's assessment to be independent of the Georgia Bureau of Investigations, which he had "total respect" for but still did not want to "piggyback on its work." *Id.*

Georgia were "false allegations," and that Giuliani's "suitcase full of fake ballots" story was "reckless" and "untrue."[9] Deputy Attorney General Jeffrey Rosen explained the first Trump administration "[did not] have a factual basis for asserting that there's fraud occurring or has occurred in Georgia."[10]

***Allegations regarding Dominion Voting Systems have been debunked:***

- On November 12, 2020, the Cybersecurity & Infrastructure Security Agency (CISA) stated: "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."[11]

- A Georgia statewide hand recount "upheld and reaffirmed" the outcome produced by machine tabulation, disproving claims that machines flipped votes.[12]

---

[9] Written Statement of Proposed Testimony of Byung J. "BJay" Pak Former U.S. Attorney for the Northern District of Georgia, Select Committee Hearing at 2-3 (Jun. 13, 2022) https://docs.house.gov/meetings/IJ/IJ00/20220613/114877/HHRG-117-IJ00-Wstate-PakB-20220613.pdf.

[10] *Interview of Jeffrey A. Rosen: Before the H. Select Comm. To Investigate the Jan. 6th Attack on the U.S. Capitol*, 117th Cong., at 76 (Oct. 13, 2021), https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000034616/pdf/GPO-J6-TRANSCRIPT-CTRL0000034616.pdf.

[11] *Joint Statement from Elections Infrastructure Government Coordinating Council & the Election Infrastructure Sector Coordinating Executive Committees*, Cybersecurity & Infrastructure Sec. Agency (Nov. 12, 2020), https://www.cisa.gov/news-events/news/joint-statement-elections-infrastructure-government-coordinating-council-election-infrastructure.

[12] Press Release, Ga. Sec'y of State, *Historic First Statewide Audit of Paper Ballots Upholds Result of Presidential Race* (Nov. 19, 2020), https://sos.ga.gov/news/historic-first-statewide-audit-paper-ballots-upholds-result-presidential-race.

- Despite that recount, President Trump and his legal team continued to promote Dominion-related conspiracy theories that were later discredited by federal officials and courts.[13] Attorney General Barr explained the Dominion claims were "complete nonsense," "idiotic," and had "absolutely zero basis."[14] Secretary Raffensperger explained directly to President Trump that a 100-percent hand tally and a subsequent recount yielded virtually identical results, confirming the machines' accuracy.[15]

- Dominion ultimately secured a nearly $800 million civil settlement with *Fox News* over related false claims about its voting machines.[16]

Collectively, these investigations and judicial findings established that there was no evidence of systemic voter fraud in Georgia or Fulton County in 2020. There is significant evidence in the public record suggesting that these same debunked theories supported the federal warrant. For example, a "report" from the Election

---

[13] *See supra* n.6 at 12; Mike Balsamo, *In exclusive AP interview, AG Barr says no evidence of widespread election fraud, undermining Trump*, Associated Press (Dec. 11, 2020), https://www.ap.org/news-highlights/best-of-the-week/2020/exclusive-interview-with-attorney-general-barr-nets-massive-scoop/.

[14] *See supra* n.8 at 19, 25.

[15] Amy Gardner and Paulina Firozi, *Here's the full transcript and audio of the call between Trump and Raffensperger*, The Washington Post (Jan. 5, 2021), https://www.washingtonpost.com/politics/trump-raffensperger-call-transcript-georgia-vote/2021/01/03/2768e0cc-4ddd-11eb-83e3-322644d82356_story.html.

[16] David Bauder, Randall Chase, and Geoff Mulvihill, *Fox, Dominion reach $787M settlement over election claims*, Associated Press (Apr. 18, 2023), https://apnews.com/article/fox-news-dominion-lawsuit-trial-trump-2020-0ac71f75acfacc52ea80b3e747fb0afe.

Oversight Group, which contained a number of these disproven conspiracies, purported to describe violations of the same federal statutes cited in the Warrant.[17] One of the report's authors, Kevin Moncla, appeared to take credit for the government's search and seizure,[18] and another contributor, Garland Favorito, said he had knowledge of the probable cause that justified the Warrant, while clarifying he did not have prior knowledge of the FBI's raid.[19]

## **LEGAL STANDARD**

"The common-law right of access to judicial proceedings" is a "right grounded in the democratic process" and "an essential component of our system of justice" that "is instrumental in securing [its] integrity" because "the operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309, 1311 (11th Cir. 2001) (quoting *Landmark Comm. v. Virginia*, 435 U.S. 829, 839 (1978)); *see also Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) ("This right [of public access] is important if the public is to appreciate fully the often significant

---

[17] Election Oversight Group, LLC, *Fulton County: Report of Investigation of the 2020 General Election* (Jan. 6, 2026), https://www.scribd.com/document/989542479/Report-of-Investigation-Fulton-2020.

[18] Kevin Moncla (@KevinMoncla), X (Jan. 31, 2026, at 4:35 PM EST), https://x.com/KevinMoncla/status/2017713340601008350?s=20.

[19] The Propaganda Report, *FBI Fulton Election Office Raid w/Garland Favorito* (Rumble, Jan. 30, 2026), https://rumble.com/v752ki6-fbi-fulton-election-office-raid-wgarland-favorito.html?e9s=src_v1_sa%2Csrc_v4_sa_o%2Csrc_v1_ucp_a.

events at issue in public litigation and the workings of the legal system."). This right, however, is not absolute. *See Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 598 (1978). Courts "have discretion to determine which portions of the record, if any, should be placed under seal, but [the court's] discretion is guided by the presumption of public access to judicial documents." *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013). "To determine the scope of the common-law right of access, which applies in both criminal and civil proceedings," the Eleventh Circuit "'traditionally distinguish[es] between those items which may properly be considered public or judicial records and those that may not; the media and public presumptively have access to the former, but not to the latter.'" *Id.* (quoting *Chicago Trib. Co.*, 263 F.3d at 1311).

The Eleventh Circuit applies the common law "balance of interests" test to decide whether access to judicial records should be granted. "The test for whether a judicial record can be withheld from the public is a balancing test that weighs 'the competing interests of the parties' to determine whether there is good cause to deny the public the right to access the document." *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (quoting *Chicago Trib. Co.*, 263 F.3d at 1312). Among the factors to be considered are "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events,

11

and whether the press has already been permitted substantial access to the contents of the records." *Newman*, 696 F.2d at 803. Other factors include "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007). However, "[t]he common law right of access may be overcome by a showing of good cause, which requires balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." *Id.* (internal quotation marks omitted). "Courts determine whether good cause exists by looking to the nature and character of the information in question." *Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media*, LLC, 918 F.3d 1161, 1169 (11th Cir. 2019).

## ARGUMENT

### I. The Search Warrant Affidavit Is a Judicial Record Subject to the Common Law Right of Access

Special Agent Evans' Affidavit, submitted under seal, unquestionably falls within the category of a judicial record or document to which the public enjoys a common law right of access. This Court has held that the "common law right to inspect and copy judicial records and documents applie[d]" when the press sought access to search warrant affidavits. *In re Four Search Warrants*, 945 F. Supp. 1563,

12

1567 (N.D. Ga. 1996) (granting press access to redacted search warrant affidavits following the press's motion to intervene). The affidavit in that instance concerned the investigation of the Olympic Park bombing suspect Richard Jewell. With the actual perpetrator of the bombing still at large, the Court provided both Mr. Jewell and, subsequently, the press access to most of the information contained in the search warrant affidavits. The Court ordered that details about the bomb's construction and the government's investigative techniques be redacted, since it reasoned that information would make it more difficult to identify and prosecute the real bomber. *Id.* at 1570; s*ee also In re Macon Telegraph Pub. Co.*, 900 F.Supp. 489 (M.D. Ga. 1995) (finding a "common law right of access" to sealed search warrant affidavits). Thus, the Court, recognizing that pre-indictment search warrants were judicial records, then engaged in a balancing test to determine whether to permit public access to the affidavits.

Because the Search Warrant Affidavit is undeniably a public record under common law, the only remaining question is whether the balance of factors favors unsealing. It decisively does.

**II.   The Balance of Factors Compels the Court to Unseal the Affidavit Under the Common Law Right of Access**

There is a strong imperative for the Court to unseal the Search Warrant Affidavit. The common law right of access to judicial records ensures the integrity of the judicial process and serves to enhance the public's trust in those procedures,

by mandating a presumption of transparency. *Chicago Trib. Co.*, 263 F.3d at 1309, 1311; *see also Newman*, 696 F.2d at 803 (equating the common law right to access judicial records with the right to attend judicial proceedings). As documented in Petitioners' Emergency Motion for Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g), the Search Warrant Affidavit is likely based upon allegations of voter fraud that have been repeatedly disproven. Mem. of Law for Rule 41(g) Mot. at 4–9. At least eleven different lawsuits failed to prove any fraud, irregularities, or procedural deficiencies sufficient to impact Georgia's presidential election. *Id.* The continued perpetuation of these unfounded allegations sows distrust around both judicial and electoral processes in Fulton County and the state of Georgia. Transparency is necessary to ensure public knowledge and confidence. At a minimum, the public has a right to know what its government is doing. Fundamentally, the public has a strong interest in finding out whether the Department of Justice ("DOJ") is now relying on the same theories that have been discredited repeatedly to forcefully seize their voting records.

All of the Eleventh Circuit's articulated factors for determining whether a judicial record should be made public pursuant to the common law rule weigh in favor of unsealing the Affidavit, or at minimum are neutral. Public access to the Affidavit will surely "promote public understanding of historically significant events." *In re Four Search Warrants*, 945 F. Supp. at 1568 (quoting *Newman*, 696

F.2d at 803). The 2020 presidential election was a consequential moment—and President Trump and his allies have made it even more so in their attempts to overturn the results. Petitioners have nothing to hide, and neither should the United States. Relatedly, the allegations leading to this Warrant have been loudly championed and promoted. The Affidavit will also have information "concerning public officials or public concerns." *Romero*, 480 F.3d at 1246. Indeed, there may be no greater issue of public concern than the integrity of our elections and federal seizure of elections materials properly held by the state of Georgia.

Meanwhile, none of the harms the Eleventh Circuit has identified that would counsel against disclosure are compelling here. Unsealing the Affidavit will not promote public scandal. *Newman*, 696 F.2d at 803; *see also Nixon*, 435 U.S. at 598 ("the publication of the painful and sometimes disgusting details of a divorce case" serving as an example of public scandal) (internal quotations omitted). In fact, the search and seizure of Fulton County's election materials, without disclosure of the underlying supposed justification, only serve to create greater outrage and confusion. Additionally, injuries related to publicizing certain facts contained within a sealed judicial record—such as "whether allowing access would … harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, [and] whether there will be an opportunity to respond to the information," *Romero*, 480 F.3d at 1246—would not favor keeping the Affidavit

sealed, either, since such harm has already been done; the President and his champions continue to openly trumpet disproven allegations against Fulton County and the Board of Registration and Elections.

The traditional reasons for maintaining secrecy in criminal investigations carry little weight here. Even assuming there was a legitimate basis for the Search Warrant, which the record suggests there was not, the investigation does not appear to concern any active threat to the public. Unlike the Richard Jewell case, the conduct at issue took place over five years ago. Moreover, there is no reason to believe that the Affidavit contains information that would compromise DOJ's investigation. *See United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993) (holding that protecting an ongoing law enforcement investigation can be a sufficiently compelling reason to block access to judicial documents like search warrants). Numerous unfounded theories of alleged wrongdoing or criminality relating to the 2020 presidential election have been aired—and disproven—in the public arena. *See* Mem. of Law for Rule 41(g) Mot. 4-9. As with the Jewell affidavit, much, if not all, of the information at issue here is presumably already publicly known. Given the flurry of prior civil litigation in federal and state courts, all seeking the same materials and all relating to the same allegations, there is strong reason to believe that the allegations contained in the Affidavit will match public claims regarding the security of the 2020 presidential election in Fulton County.

## CONCLUSION

For the reasons stated herein, Petitioners respectfully request that the Court unseal the Affidavit the government submitted in support of the Search Warrant the government obtained on January 28, 2026.

Dated: February 4, 2026

Respectfully submitted,
/s/ *Y. Soo Jo*
Y. Soo Jo
Georgia Bar No. 385817
OFFICE OF THE FULTON
COUNTY ATTORNEY
141 Pryor St. SW, Suite 4038
Atlanta, GA 30303
404-612-0246
soo.jo@fultoncountyga.gov

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of points and authorities has been prepared in Times New Roman 14 pt font pursuant to LR 7.1(D).

Dated: February 4, 2026

Respectfully submitted,
/s/ *Y. Soo Jo*
Y. Soo Jo
Georgia Bar No. 385817
OFFICE OF THE FULTON
COUNTY ATTORNEY
141 Pryor St. SW, Suite 4038
Atlanta, GA 30303
404-612-0246
soo.jo@fultoncountyga.gov