**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ROBERT L. "ROBB" PITTS, *et al.*,<br><br>     Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>     Respondent. | No. 1:26-MI-00012-JPB |

<u>**AMICUS CURIAE BRIEF OF GEORGIA FIRST
IN SUPPORT OF PETITIONERS' MOTION
FOR RETURN OF PROPERTY**</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... i

INTRODUCTION AND INTEREST OF AMICUS CURIAE ....................................... 1

BACKGROUND ........................................................................................ 4

ARGUMENT ............................................................................................ 6

   I.   Voters Have a Strong Interest in the Protection of Their Ballots and in Their Personal Information ............................................................... 6

   II.  The Court Should Amend Its Warrant to Protect the 2020 Election Materials. ............................................................................ 10

CONCLUSION ........................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026)................................................................ 12

*Andrews v. D'Souza*, 696 F.Supp.3d 1332 (N.D. Ga. 2023) ............................ 10

*Burdick v. Takushi*, 504 U.S. 428 (1992)........................................................... 5

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008) ........................ 10

*Dem. Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1315 (11th Cir. 2019) ......... 5

*In re Dinnan*, 661 F.2d 426 (5th Cir. Unit B 1981).......................................... 8

*League of United Latin Am. Citizens v. Pub. Interest Legal Found.*, No. 1:18-cv-423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018) ........................... 10

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ............................... 8

*Moore v. Kobach*, 359 F. Supp. 3d 1029 (D. Kan. 2019).................................... 9

*N.L.R.B. v. A.J. Tower Co.*, 329 U.S. 324 (1946).............................................. 8

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016).................... 9

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)................. 9

*Schmitz v. Barron*, 863 S.E.2d 121 (Ga. 2021).................................................. 5

*Trump v. United States*, No. 22-13005, 2022 WL 4366684 (11th Cir. Sept. 21, 2022)................................................................................................ 13

*United States v. Alexander*, No. 1:25-cv-7084 (N.D. Ga. filed Dec. 11, 2025) ............................................................................................................... 7

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) ....................................................................................................... 12

*United States v. Grubbs*, 547 U.S. 90 (2006) .................................................... 14

*United States v. Marin-Buitrago*, 734 F.2d 889 (2d Cir. 1984) ....................... 14

*United States v. Oregon*, No. 25-cv-1666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ................................................................................................ 11

*United States v. Raffensperger*, No. 1:26-cv-485 (N.D. Ga. filed Jan. 23, 2026) .................................................................................................... 7

*United States v. Weber*, No. 2:25-cv-9149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026)................................................................... 10

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886).......................................................... 5

## Other Authorities

Fed. R. Crim P. 41, Notes of Advisory Committee on 2009 Amendments...... 15

Ga. Const. Art. II, § I, Para. I........................................................................ 10

Orin Kerr, *Executing Warrants for Digital Evidence: The Case for Use Restrictions on Nonresponsive Data*, 48 Tex. Tech. L. Rev. 1, 36 (2015) ............................................................................................. 14

## INTRODUCTION AND INTEREST OF AMICUS CURIAE

The federal government's execution of a search warrant authorizing the seizure of ballots and other election-related records from the Fulton County Board of Registration and Elections implicates voters' confidential data and may affect voter confidence in the electoral system. It raises significant legal and constitutional concerns regarding transparency, voter privacy, and the allocation of authority between federal and state election administration.

"Voting is the beating heart of democracy." *Dem. Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1315 (11th Cir. 2019) (citation omitted). It is "preservative of all rights," *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886), and "of the most fundamental significance under our constitutional structure," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Georgia law "allows elections to be contested through litigation, both as a check on the integrity of the election process and as a means of ensuring the fundamental right of citizens to vote and to have their votes counted accurately," *Schmitz v. Barron*, 863 S.E.2d 121, 123 (Ga. 2021) (citation omitted), and such contestation and litigation has repeatedly occurred—and concluded—for the 2020 election. Notwithstanding the conclusion of those proceedings, the federal government has now undertaken additional review of state-maintained election materials, implicating voter privacy and public trust in the electoral system.

1

This process should be transparent and open to public view, as this Court has already recognized with its unsealing order, and voters' private information must be protected. Transparency and consistent judicial oversight are necessary to ensure public confidence that elections materials are handled lawfully and in accordance with established procedures.

Amicus curiae Georgia First is a Georgia-grown, nonpartisan organization committed to ensuring that Georgians enjoy—among other things—safe, secure, and fair elections unimpeded by partisan politics and gamesmanship. Georgia First's leadership and Board of Directors is cross-partisan and reflect a diversity of political perspectives underscoring its nonpartisan commitment to election integrity. Its founder and Executive Director, Natalie Crawford, is a lifelong Republican and was formerly Chairwoman of the Habersham County Board of County Commissioners, where she served as a county commissioner for eight years. Georgia First has an interest in preserving the integrity and stability of Georgia's electoral system and seeking judicial review of actions that may affect public confidence in that system. Amicus does not take a position on the merits of any criminal investigation. Rather, it appears solely to protect the fundamental American and Georgian values of voter privacy, the integrity of election records, and the public's right of access to judicial proceedings.

It files this brief standing in the interest of Fulton County voters whose ballots and private information are currently in federal custody.

Georgians who cast ballots to choose their leaders in 2020 have vital interests that are implicated here. Voters have a strong interest in the protection of the election materials to ensure the integrity of their long-cast ballots, the privacy of their own ballots, and the security of personally identifiable information that is reflected in unredacted voter rolls, poll books, absentee ballot envelopes, and provisional balloting packets. The removal of these records from local custody implicates important federalism principles and underscores the need for careful judicial oversight.

To protect these multiple interests, Georgia First urges this Court to take action to protect the elections materials at issue by granting Fulton County's motion for the return of its records or, in the alternative, modifying the search warrant and issuing a protective order over the seized materials. Any protective order should protect the integrity of the ballots, voter rolls, and other records; prohibit the alteration of any of the seized materials; prevent the disclosure of the records and ballots to any person without pre-approval by the Court; and require the government to provide regular reports to the Court, describing the progress of any review analysis of the seized material.

## BACKGROUND

Following the 2020 general election, multiple audits, recounts, investigations, and judicial proceedings were conducted at both the state and federal levels to examine the administration and outcome of the election in Georgia, including Fulton County.

Here in Georgia, this process included a report from an election monitor, selected by the majority-Republican State Election Board, to monitor Fulton County's tabulation of the 2020 election returns process in real-time,[1] as well as a Performance Review Board report issued by a bipartisan group selected by the State Election Board, at the request of the Georgia legislature to review the Fulton County election process. Both reports found Georgia's 2020 election secure, and that there was no credible evidence of fraud. Two United States Attorneys for the Northern District of Georgia also concluded that no fraud occurred, as did the Georgia Bureau of Investigation. And the Georgia Secretary of State also oversaw counts, recounts, and then more recounts— both computerized and manual. These varied and independent efforts all

---

[1] The monitor, who was present during the entire tabulation of ballots, reported that they "saw no instances of dishonesty, fraud, or intentional malfeasance." *See* Seven Hills Strategies, *State Election Board Report – Post-Election Executive Summary January 12, 2021, available at* https://www.documentcloud.org/documents/20484973-fulton-county-state-election-board-report/.

consistently found that, in fact, the election was secure and the results reliable—and that no criminal conduct of any kind was discovered.

Lawsuits were filed in the Northern District of Georgia. Lawsuits were filed in Fulton County Superior Court. Yet no election monitor, law enforcement agency, or judge found any fraud in the 2020 election in Fulton County. Instead, what has been found over and over again is that approximately 525,000 Fulton County voters validly cast their ballots and that the results in both Fulton County and in the State of Georgia supported the certification of the election results.

More than five years after the election, this Court issued a search warrant authorizing federal agents to seize a broad range of election materials from Fulton County, including originals of all physical ballots from the 2020 General Election; "[a]ll tabulator tapes for every voting machine used in Fulton County"; "[a]ll ballot images produced during the original ballot count beginning on November 3, 2020, the recount, and any other ballot images that were created from ballot scanning from the 2020 General Election in Fulton County"; "[a]ll voter rolls from the 2020 General Election in Fulton County from absentee, early voting, [and] in person" voting, and all the computerized records. *See* Redacted Warrant Affidavit, Attachment B, Dkt. No. 22-2. The government has claimed these are necessary for investigation of whether there was a misdemeanor violation of 52 U.S. § 20701 (failure to maintain records

for 22 months) or a violation of 52 U.S.C. § 20511 (knowing fraud, in connection with a federal election). The seized materials include private identifying voter information like voter signatures, Social Security numbers, driver's license and state-issued identification card numbers, and dates of birth. The Department of Justice has been trying unsuccessfully to obtain that information from both the State of Georgia and Fulton County in two civil lawsuits, *see United States v. Alexander*, No. 1:25-cv-7084 (N.D. Ga. filed Dec. 11, 2025) (seeking 2020 election materials from Fulton County); *United States v. Raffensperger*, No. 1:26-cv-485 (N.D. Ga. filed Jan. 23, 2026) (seeking statewide voter registration list)—two of several cases nationwide concerning federal access to state-maintained voter information. While those lawsuits remained pending, the government executed the search warrant and took custody of Fulton County voters' records.

## ARGUMENT

### I.    Voters Have a Strong Interest in the Protection of Their Ballots and in Their Personal Information.

The results and conduct of the 2020 election have been repeatedly audited and reviewed. *See supra* at 3-4 (BACKGROUND). Voters and the states have a strong interest in ensuring that the legitimacy of election results are not endlessly challenged. Allowing for endless election challenges "would invade the secrecy of the ballot, destroy the finality of the election result, invite

unwarranted and dilatory claims by defeated candidates" and would "keep perpetually before the courts the same excitements, strifes, and animosities . . . which ought, for the peace of the community, and the safety and stability of our institutions, to terminate with the close of the polls." *N.L.R.B. v. A.J. Tower Co.*, 329 U.S. 324, 331–32 (1946) (citation and quotation marks omitted) (discussing the need for finality in political elections). The right of Georgians to have their votes counted is burdened when additional proceedings or actions call into question results that have already been certified and reviewed pursuant to law.

Voters also have multiple privacy interests at stake. For one, voters possess a privacy interest in the election records themselves. *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 343 (1995) (recognizing the importance of "the secret ballot, the hard-won right to vote one's conscience without fear of retaliation"); *In re Dinnan*, 661 F.2d 426, 432 (5th Cir. Unit B 1981) ("[T]he reason ballots are kept secret is to encourage individuals to vote. . . . If an individual's ballot was not privileged, the policy of the secret ballot could be frustrated easily."); *see also* Ga. Const. Art. II, § I, Para. I ("Elections by the people shall be by secret ballot and shall be conducted in accordance with procedures provided by law."). Further, individuals could be exposed to potential retaliation or adverse consequences. Voters also have a privacy interest in their personally identifiable information—including highly

7

sensitive identifiers such as driver's license numbers and Social Security numbers, which are included in voter rolls, *see* O.C.G.A. § 21-2-225, one of the categories of document expressly permitted to be seized by the warrant. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (recognizing the importance of redaction of "uniquely or highly sensitive personal information" in voter files); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Allowing disclosure of unredacted voter applications is inconsistent also with Congress's concern for individual privacy evidenced in Federal statutes, including statutes such as the Voting Rights Act of 1965, the Freedom of Information Act, and the Privacy Act of 1974." (internal citations omitted)); *Moore v. Kobach*, 359 F. Supp. 3d 1029, 1043 (D. Kan. 2019) (applying the constitutional right to privacy in "avoiding disclosure of personal matters" to voters' personal information held by elections officials).

Allowing broad federal access without appropriate judicial safeguards to voter information to which the government is not otherwise entitled, in connection with investigations concerning alleged election-related violations, raises significant federalism concerns and implicates the individual rights of voters. Expansive federal access to state-maintained election records, if not cabined by appropriate judicial oversight, risks creating uncertainty regarding the finality of certified election results. Such a state of affairs would lead to voters becoming disillusioned with the electoral process. *See Crawford v.*

*Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008) (plurality op.) (recognizing that "public confidence in the integrity of the electoral process . . . encourages citizen participation in the democratic process"). Further, voters could be discouraged from registering to vote and voting out of fear that they will be subjected to unwarranted scrutiny or misuse of their personal information. *See, e.g.*, *United States v. Weber*, No. 2:25-cv-9149-DOC-ADS, 2026 WL 118807, at *20 (C.D. Cal. Jan. 15, 2026) ("The centralization of [confidential voter] information by the federal government would have a chilling effect on voter registration . . . lead[ing] to decreasing voter turnout as voters fear that their information is being used for some inappropriate or unlawful purpose."). Others could fear being subjected to public harassment by elected officials and the media. *See, e.g.*, *Andrews v. D'Souza*, 696 F.Supp.3d 1332, 1348-49 (N.D. Ga. 2023) (holding that publication of a citizen's face and license plate in video falsely alleging he was engaged in fraud constituted voter intimidation under the Civil Rights Act); *League of United Latin Am. Citizens v. Pub. Interest Legal Found.*, No. 1:18-cv-423, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018) (similar, for allegations of fraud accompanied by individual voters' personal information obtained from county registrars).

Recent litigation nationwide reflects ongoing disputes concerning the scope of federal authority in relation to state-administered election systems. These cases illustrate the continuing need for careful adherence to

constitutional federalism principles in matters involving state election administration, as such federal action holds the potential to "disturb the framework of federalism envisioned and enshrined in our Constitution." *United States v. Oregon*, No. 25-cv-1666, 2026 WL 318402, at *13 (D. Or. Feb. 5, 2026).

## II. The Court Should Amend Its Warrant to Protect the 2020 Election Materials.

Amicus urges the Court to grant Petitioners' motion to return the seized materials to Fulton County. If all materials are not immediately returned, Amicus urges the Court to amend its warrant and issue a Protective Order to ensure that further protections are taken to protect the integrity of the records so that the seizure of the records does not result in the very harm—fraud and abuse—this investigation is intended to address. To ensure integrity of election materials, Amicus urges at least: (1) a time-limitation on the seizure; (2) any materials seized beyond the "to be seized clause" immediately returned; (3) progress reports to the Court; and (4) limitations on access and disclosure. Unsealing the warrant affidavit revealed why the government claims it needs these records; a protective order will ensure those records are not misused now that they have been seized. Both serve the same end: public confidence in election integrity.

Recent public statements and litigation filings raise concerns regarding the handling of sensitive government data. *See* Notice of Corrs. to the Record at 5-6, *Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026) (federal government informing the court that agency officials improperly shared sensitive Social Security data with an outside group and uploaded such data on an unapproved third-party server, in a "manner . . . outside SSA's security protocols"). These statements underscore the need for the Court to take steps to ensure that the seized materials are not tampered with or mishandled, and to guard against even a public perception of such a risk.

The authority to regulate the scope of a search and the method by which a search is conducted is commonplace not only in the explicit terms of a search warrant before and at its execution, but also in the creation of post-search protocols established by the court. *See, e.g.*, *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010); Orin Kerr, *Executing Warrants for Digital Evidence: The Case for Use Restrictions on Nonresponsive Data*, 48 Tex. Tech. L. Rev. 1, 36 (2015) ("To ensure that computer warrants are not executed in ways that resemble general warrants, courts should interpret the seizure power to impose use restrictions on the nonresponsive files seized and observed in the course of the government's permitted search for the responsive files. This should be the judiciary's next '*Riley* moment,'

11

triggered by the need to restore traditional Fourth Amendment limits on the warrant authority in the new world of digital searches."); Fed. R. Crim P. 41, Notes of Advisory Committee on 2009 Amendments (explaining that the judge has authority to prescribe procedures and time limits for the search of electronic information on a case-by-case basis). The power of this Court to regulate access to the materials seized pursuant to a search warrant is governed by "equitable principles." *See Trump v. United States*, No. 22-13005, 2022 WL 4366684, at *7 (11th Cir. Sept. 21, 2022). The equitable considerations here include protecting voter privacy, maintaining the integrity of election records, and preserving public confidence in the judicial and voting processes. And whether a court should exercise its equitable jurisdiction in this context "is subject to the sound discretion of the district court." *Id.*

If this Court does not grant the request to immediately return all seized materials to Fulton County, then protecting and monitoring the government's seizure is critical and would advance voters' interests in record integrity and timely resolution. Time limits on the seizure will require the federal agents to act diligently and with dispatch so that temporary federal custody of the Fulton County records does not extend beyond what is reasonably necessary. Any records that were seized that are not expressly included in the "to be seized" clause should immediately be returned to Fulton County and not retained by the federal government (absent the issuance of an additional search warrant

or a valid claim that the documents or data are subject to a proper seizure doctrine). This measure would help ensure that the seizure extends no further than explicitly authorized by this Court.

The Court should also require the FBI or the appropriate Department of Justice officials to provide regular progress reports, at least monthly, to the Court concerning the status of the investigation, including the progress of any analysis of the ballots, voter rolls, and computer data. If any material representation in the search warrant application is determined to be unsupported by subsequent findings, that information should be promptly presented to the Court, so the Court may assess whether continued retention of the materials remains justified. *See United States v. Grubbs*, 547 U.S. 90, 95 n.2 (2006) ("For this reason, probable cause may cease to exist after a warrant is issued. The police may learn, for instance, that contraband is no longer located at the place to be searched."); *United States v. Marin-Buitrago*, 734 F.2d 889, 894 (2d Cir. 1984) ("[W]hen a definite and material change *has* occurred in the facts underlying the magistrate's determination of probable cause, it is the magistrate, not the executing officers, who must determine whether probable cause still exists. Therefore, the magistrate must be made aware of any material new or correcting information.").

The Court should also require prior approval for any individuals outside of the designated federal investigative personnel who participate in the review

process. This oversight should be clearly defined and consistently applied to ensure compliance with Court-imposed limitations. Any such participants should be subject to confidentiality obligations and restrictions prohibiting disclosure of private voter data or identifying information absent authorization from the Court. The relevant federal government officials should also be required to keep a written log of every person participating in the review of the information, which should be reported to the Court as part of the required regular reports.

## <u>CONCLUSION</u>

For all these reasons, the Court should grant Fulton County's motion or otherwise amend the search warrant or enter a protective order to safeguard the seized elections materials.

Dated: February 11, 2026                Respectfully submitted,

/s/ Cory Isaacson _____                /s/ Donald F. Samuel _____
Cory Isaacson, Bar No. 983797           Donald F. Samuel, Esq., Bar No. 624475
Akiva Freidlin, Bar No. 692290          Amanda Clark Palmer, Esq., Bar No.
Briana Futch, Bar No. 007314            130608
AMERICAN CIVIL LIBERTIES UNION          GARLAND, SAMUEL & LOEB, P.C.
FOUNDATION OF GEORGIA                    3151 Maple Drive, N.E.
P.O. Box 570738                          Atlanta, GA  30305
Atlanta, GA 30357                        Tel.: 404-262-2225
cisaacson@acluga.org                     Fax: 404-365-5041
afreidlin@acluga.org                     dfs@gsllaw.com
bfutch@acluga.org                        aclark@gsllaw.com

Theresa J. Lee*
William Hughes*
Sophia Lin Lakin*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
tlee@aclu.org
whughes@aclu.org
slakin@aclu.org

*motion for admission *pro hac vice*
forthcoming

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically Century Schoolbook 13 pt. font.


*/s/ Cory Isaacson*
Cory Isaacson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record.

*/s/ Cory Isaacson*
Cory Isaacson